UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

H.K. HUILIN INTERNATIONAL TRADE CO., LTD.,

                Plaintiff,

      -against-

KEVIN MULTILINE POLYMER INC., K.M. PACKAGING, INC., JBM TRADING INC., and CHAO MING ZHEN A/K/A KEVIN M. ZHEN,

                Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**10-CV-05589 (NGG) (JMA)**

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ NOV 0 1 2012 ★
BROOKLYN OFFICE

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff brought suit against Defendants alleging various state law causes of action arising from alleged shipping contracts. Defendants Chao Ming Zhen and K.M. Packaging, Inc. ("KM Packaging") moved to dismiss the Complaint for failure to state a claim, or, in the alternative, for summary judgment. Plaintiff opposed these motions and filed a cross-motion for summary judgment. For the reasons set forth below, the court is not satisfied that it has subject matter jurisdiction over this suit and will not rule on the parties' motions unless it is so satisfied. Plaintiff is afforded an opportunity to submit either additional evidence or argument as described below to cure the jurisdictional defect.

**I.  BACKGROUND**

Plaintiff, a manufacturer of plastic goods, brought suit against Zhen and three corporations that Zhen allegedly operated—Kevin Multiline Polymer Inc. ("KM Polymer"), KM Packaging, and JBM Trading Inc. ("JBM")—alleging various state causes of action arising from Zhen's alleged failure to pay for certain goods ordered from Plaintiff. (See Am. Compl. (Dkt. 5)

1

¶¶ 8-22.) It is alleged that Zhen placed these orders through KM Polymer and KM Packaging, but when these entities became insolvent, he formed JBM to avoid any obligation to pay Plaintiff. (Id. ¶¶ 28-32.)

Plaintiff does not allege any federal causes of action and asserts that the court has jurisdiction based solely on diversity of citizenship. (Id. ¶ 5.) See 28 U.S.C. § 1332(a)(2). Specifically, Plaintiff alleges that it is a foreign corporation, organized under the laws of the People's Republic of China and with a principal place of business in Hong Kong. (Id. ¶ 1.) KM Polymer, KM Packaging, and JBM are all alleged to be or have been corporations organized in New York State and with principal places of business in Brooklyn, New York. (Id. ¶¶ 2-4.) As to Zhen, Plaintiff alleges that he is "an individual with a current residence at: 6 Hilton Court, Hicksville, NY. [sic] 11801." (Id. ¶ 5.) There are no allegations concerning his citizenship or immigration status.

On July 26, 2012, Defendants Zhen and KM Packaging moved to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment.[1] (See Def. Mot. (Dkt. 20).) Plaintiff opposed these motions and filed a cross-motion for summary judgment. (See Pl. Mem. (Dkts. 16-22).)

## II. DISCUSSION

### A. Diversity Jurisdiction

As a "creature[] of limited jurisdiction," Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002), this court is "duty bound to ascertain that it ha[s] jurisdiction" before it can adjudicate substantive motions, Gutierrez v. Fox, 141 F.3d 425, 426,

---

[1] KM Polymer and JBM have not moved or otherwise appeared in this case. This is presumably because Zhen argues that he has "never had any involvement" with KM Polymer and "is not a shareholder or officer, or owner, or director or CEO" of JBM, and therefore does not have authority to represent these entities. (Milos Decl. (Dkt. 21) ¶¶ 13-14.)

2

428 (2d Cir. 1998). See also Fed. R. Civ. P. 12(h)(3). "The party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." Advani Enters., Inc. v. Underwriters at Lloyds, 140 F.3d 157, 160 (2d Cir. 1998); see also Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267 (1806) (establishing the "complete diversity" rule under what is now 28 U.S.C. § 1332).

When Plaintiff filed this suit in 2010, the federal courts were in some disagreement as to whether diversity jurisdiction existed over a suit between a nonresident alien on one side and a resident alien and a United States citizen on the other. To understand this dilemma, some background is needed.

Before 1988, the diversity statute clearly afforded jurisdiction over a suit between a foreign citizen and a United States citizen. See 28 U.S.C. § 1332(a)(2) (1982) (granting jurisdiction over suits that satisfy the amount in controversy requirement and are between "citizens of a State and citizens or subjects of a foreign state"). But a foreign citizen who resided in the United States did not qualify as a United States citizen for diversity purposes. See, e.g., Chok v. S & W Berisford, PLC, 624 F. Supp. 440, 442 (S.D.N.Y. 1985) ("When there are alien parties on both sides of the controversy, jurisdiction will be found lacking even though . . . one is a resident or domiciliary of the United States."). This resulted in the odd situation that a court would have jurisdiction over a suit between a United States citizen and a foreign citizen residing in the same state.

In 1988, Congress passed the Judicial Improvements and Access to Justice Act, Pub. L. No. 100-702, 102 Stat. 4642 (1988). This law added the following "hanging paragraph" to the end of § 1332(a), after that provision's enumerated list of the different types of diversity cases:[2]

---

[2] Before 1988, § 1332(a) provided:

"For the purposes of this section . . . an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." Pub. L. No. 100-702, § 203(a), 102 Stat. 4642, 4646 ("1988 Amendment"). The general view was that the purpose of this amendment was to *remove* federal jurisdiction from a case between a citizen of a U.S. state and a permanent resident alien of that same U.S. state because, in effect, such a lawsuit was between two citizens of the same state. See, e.g., A.T.X. Export, Ltd. v. Mendler, 849 F. Supp. 283, 284 (S.D.N.Y. 1994) (stating that this provision "was designed to preclude federal jurisdiction in an action in which a resident alien is sued by a citizen of the same state"). This was often referred to as the "suits between neighbors" problem. Lee v. Trans Am. Trucking Serv., Inc., 111 F. Supp. 2d 135, 141 (E.D.N.Y. 1999).

But a strict application of this new section meant that a suit between a foreign resident alien and a domestic resident alien qualified for diversity jurisdiction: under § 1332(a)(2), such a suit would be between "citizens of a State [i.e., the resident alien] and citizens or subjects of a foreign state [i.e., the nonresident alien]." And some courts so applied the 1988 Amendment and allowed such cases to proceed. See, e.g., Singh v. Daimler-Benz AG, 9 F.3d 303, 306-12 (3d Cir. 1993); Bank of India v. Subramanian, No. 06-CV-2026 (WHP), 2007 WL 1424668, at *4 (S.D.N.Y. May 15, 2007); see also Richard H. Fallon, Daniel J. Meltzer, & David L. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 1363 (5th ed. 2003) (recognizing this possible reading); cf. Steiner v. Atochem, S.A., 70 F. App'x 599, 600 (2d Cir. 2003) (affirming a district court's acceptance of a stipulation of dismissal in such a case because

---

The district courts shall have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between (1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

4

it had a "reasonable basis" for exercising jurisdiction sufficient under Fed. R. Civ. P. 60(b)(4)).

However, the majority of courts in the Second Circuit did not read this section to so expand diversity jurisdiction. See Tovar v. Indiana, No. 11-CV-776 (DAB), 2011 WL 5423161, at *2 (S.D.N.Y. Nov. 8, 2011) (collecting cases); Eridan Shipping Ltd. v. Filatov, No. 07-CV-6347 (HB), 2008 WL 613151, at *1 (S.D.N.Y. Mar. 5, 2008) ("[T]he cases in this Circuit have consistently held that such a suit between a permanent resident alien and non-resident alien is barred."); Lloyds Bank v. Norkin, 817 F. Supp. 414, 415-19 (S.D.N.Y. 1993); cf. Universal Licensing Corp. v. Paoloa del Lungo S.p.A., 293 F.3d 579, 581 (2d Cir. 2002) (noting that "diversity is lacking within the meaning of [28 U.S.C. 1332(a)(2) and (3)] where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens").

Not only did the minority reading seem to cut against the statute's professed purpose to reduce, rather than expand, diversity jurisdiction, see Lloyds, 817 F. Supp. at 419, it posed serious constitutional concerns if taken to its logical conclusion. Once again, if a resident alien were always "deemed" to be a citizen of the state she lived in, then one nonresident alien could bring suit in federal court against one resident alien without the presence of any United States citizens. The Supreme Court has long cautioned that this might exceed Article III's bounds. See Hodgson v. Bowerbank, 9 U.S. (5 Cranch) 303, 303 (1809) (implying that the 1789 Judiciary Act could not constitutionally be read to grant jurisdiction over suits between only two aliens); Mossman v. Higginson, 4 U.S. (4 Dall.) 12, 14, 1 L.Ed 720 (1800) ("[T]he legislative power of conferring jurisdiction of the federal Courts[] is . . . confined to suits between citizens and foreigners."); cf. Fallon et al., supra, at 1363-64 & n.3 (highlighting these constitutional

concerns).[3]

Were this court operating without further guidance, it would be forced to tackle the tension between a statute's unambiguous text and its seemingly unintended results, a subject on which much ink has been spilled. Compare Stephen Breyer, On the Uses of Legislative History in Interpreting Statutes, 65 S. Cal. L. Rev. 845 (1992), with Max Radin, Statutory Interpretation, 43 Harv. L. Rev. 863 (1930).

Fortunately, Congress has elucidated the meaning of the 1988 Amendment through its recent passage of the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758 ("Clarification Act"). The Clarification Act eliminated entirely the "hanging paragraph" inserted in 1988, and amended § 1332(a)(2) to remove jurisdiction over suits between "citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State." Clarification Act § 101. Thus, Congress eliminated the perplexing "deeming" paragraph that applied to all of § 1332 and carefully removed jurisdiction only from suits that presented the "suits between neighbors" problem.

To be clear, the court does not strictly apply the Clarification Act to this case. The Clarification Act specifies that the amendments to § 1332 "shall take effect" on January 6, 2012, and "shall apply to any action or prosecution commenced on or after" this date, Clarification Act § 105(a); the instant suit was filed in 2010. (Compl. (Dkt. 1).) Moreover, the Second Circuit has

---

[3] It is true that in the present case, a strict application of the 1988 Amendment would not pose constitutional problems since Article III, unlike the diversity statute, only requires "minimal" rather than "complete" diversity, and all Defendants other than Zhen are United States citizens. (See Am. Compl. ¶¶ 2-4.) See also Singh, 9 F.3d at 312 ("The alleged constitutional issue that might arise when one alien sues another is not presented in this case because there is a citizen party, thereby satisfying minimal diversity."). Nevertheless, the text of the 1988 Amendment did not distinguish between cases with some United States citizens and those with none. To the extent that its plain meaning *could* in certain cases pose constitutional concerns and "abrogate 200 years of jurisprudence on complete diversity, and do so without comment," Lee, 111 F. Supp. 2d at 141, the logical reach of the 1988 Amendment at least sheds light on Congress's intent or lack thereof.

held that the Clarification Act's amendments to the statute that defines the citizenship of corporations for purposes of diversity jurisdiction, 28 U.S.C. § 1332(c), do not apply retroactively. Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 51 (2d Cir. 2012).[4] But even so, this court may examine both the strong implication of these changes and what Congress actually said it meant to do in 1988. Cf. Kuhne v. Cohen & Slamowitz, LLP, 579 F.3d 189, 197 (2d Cir. 2009) ("Under New York law, courts may look to a subsequent amendment of a law in order to discern the meaning of the pre-amendment version."); In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liability Litig., 739 F. Supp. 2d 576, 601 (S.D.N.Y. 2010) (examining Congress's later decision not to adopt a particular safe harbor provision even though it "d[id] not provide *direct* evidence of Congress's intent *at the time* it passed" the statute at issue (first emphasis added)). Here, Congress's unambiguous actions in 2011 only further support the pre-2011 holdings of Tovar and Lloyds on the meaning of the 1988 Amendment, which this court finds persuasive even putting aside the Clarification Act.

Although the 2011 Congress's actions may not, on their own, conclusively determine what the 1988 Congress meant to do, the implication of these statutory changes is noteworthy. By removing the 1988 Amendment entirely, Congress removed what some courts considered a

---

[4] It should be noted that, although the Second Circuit did not thoroughly address the issue in Bayerische, it is not entirely clear why these portions of the Clarification Act do not apply to pending cases. Congress stated that the Clarification Act's jurisdictional amendments "shall take effect" on January 6, 2012, *and* that they "shall apply to any action . . . commenced on or after" January 6, 2012. Clarification Act § 105. And federal courts must, of course, have jurisdiction for the entire length of a case. See Fed. R. Civ. P. 12(h)(3). Arguably, then, as of January 6, 2012, this first clause removes jurisdiction from pending cases like this one, and the second clause applies to future cases. Moreover, the general presumption against retroactivity may not apply to jurisdictional statutes. See Hughes Aircraft Co. v. U.S. ex rel. Schumer, 520 U.S. 939, 951 (1997) ("'Application of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case [and therefore] [p]resent law normally governs in such situations because jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.'" (citations omitted)); Landgraf v. USI Film Prods., 511 U.S. 244, 274 (1994) ("We have regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed."). Regardless, this court need not decide the issue because it holds that the 1988 Amendment alone does not confer jurisdiction over a suit in which a nonresident alien has sued both a resident alien and a United States citizen.

generally applicable provision that, in certain situations, would expand federal jurisdiction. In addition, Congress's insertion into § 1332(a)(2) explicitly removed diversity jurisdiction in a subset of cases. Eliminating an arguable grant of jurisdiction—the 1988 Amendment—and inserting a clear removal of jurisdiction—Clarification Act § 101—is at least indicative of Congress's intent in 1988. Indeed, Congress specifically noted that this portion of the Clarification Act elucidated what it meant to do in 1988 and was not the result of a new policy determination:

> The purpose of th[e 1988] change was to preclude Federal alienage jurisdiction . . . in suits between a citizen of a state and an alien permanently residing in the same state . . . . Section 101 of the [Clarification Act will] thus achieve the goal of modestly restricting jurisdiction, *which Congress sought to accomplish when it first enacted the resident alien proviso*, and would avoid the threat of the expansion of jurisdiction now posed by the proviso.

H.R. Rep. No. 112-10, at 7 (2011) (emphasis added). This House Report even addressed decisions like Singh head-on, stating that these courts had expanded federal jurisdiction when Congress had meant to restrict it. Id. Therefore, given the persuasive reasoning of the majority of courts construing the 1988 Amendment, as affirmed by Congress's recently-professed intentions, this court holds that the 1988 Amendment does not provide jurisdiction over suits between a nonresident alien on one side and resident aliens and United States citizens on the other.[5]

Having decided this legal issue, it is clear that Plaintiff's allegations do not carry its burden to establish diversity jurisdiction. The only jurisdictional allegation as to Zhen is that he

---

[5] The court is not aware of any other court that has addressed the meaning of the 1988 Amendment with the aid of the Clarification Act. Rather, it appears that only one court has even referenced the recent changes to § 1332(a), stating that they made "doubly clear" that a citizen of one state may not sue a permanent resident of that same state. MB Fin., N.A. v. Stevens, 678 F.3d 497, 500 (7th Cir. 2012). That the Seventh Circuit described this amendment as another attempt to remedy the "suits between neighbors" problem further supports this court's conclusion that the 1988 Amendment was enacted only to *remove* jurisdiction in this instance, not *create* jurisdiction in a multitude of others.

8

is a resident of New York. (Am. Compl. ¶ 5.) However, "'[i]t is well-established that allegations of residency alone cannot establish citizenship.'" Lee v. Coss, 201 F.3d 431, 431 (2d Cir. 1999) (quoting Canedy v. Liberty Mut. Ins. Co., 126 F.3d 100, 103 (2d Cir. 1997)). It is entirely possible that, given the record of this case, he is a Chinese citizen living in New York. (See Pl. Mem. at 1 (asserting that Zhen and his wife purchased their New York residence in 2009).) If that is the case, Zhen's presence opposite Plaintiff, a Chinese corporation, destroys complete diversity regardless of his permanent residence status. See Tovar, 2011 WL 5423161, at *2. If the Plaintiff cannot cure this jurisdictional defect through either of the two options outlined below, the court must dismiss the case for lack of subject matter jurisdiction.

### B. Amendment

"A failure to allege facts establishing jurisdiction need not prove fatal to a complaint," and "[u]nless the record clearly indicates that the complaint could not be saved by any truthful amendment . . . [courts] generally afford an opportunity for amendment." Canedy v. Liberty Mut. Ins. Co., 126 F.3d 100, 103 (2d Cir. 1997); see also 28 U.S.C. § 1653 (allowing "[d]effective allegations of jurisdiction [to] be amended"). Accordingly, Plaintiff is granted leave to file in good faith an affidavit and/or exhibits establishing that Zhen is a United States citizen.

### C. Dispensable Party

Even if Zhen is not a United States citizen, the court may dismiss an indispensable, nondiverse party pursuant to Federal Rules of Civil Procedure 21 and 19(b) and maintain jurisdiction over the case. See Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Publ'g Corp., 635 F.3d 48, 51 (2d Cir. 2011) ("'Federal Rule of Civil Procedure 21 allows a court to drop a nondiverse party at any time to preserve diversity jurisdiction, provided the nondiverse

party is not 'indispensable' under Rule 19(b).'" (citation omitted)).

Rule 19(b), in turn, identifies four factors to consider in determining if a party is indispensable:

> (1) The extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other relief; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

Fed. R. Civ. P. 19(b). If Plaintiff cannot establish that Zhen is a United States citizen, it is granted leave to file a memorandum of law arguing that Zhen is a dispensable party and may be dismissed under these Rules.

## III.  CONCLUSION

If Plaintiff wishes to continue this action in federal court, by November 5, 2012, it shall serve upon Defendants Zhen and KM Polymer, either (1) an affidavit and/or exhibits establishing that Defendant Zhen is a United States citizen; or, if Plaintiff cannot in good faith provide such evidence, (2) a memorandum of law detailing why Defendant Zhen may be dismissed from this case as a dispensable party under Federal Rules of Civil Procedure 21 and 19(b). Defendants Zhen and KM Polymer shall serve their response to either submission upon Plaintiff by November 19, 2012. Plaintiff shall then file the fully bundled papers, including any reply, with the court by November 30, 2012.

SO ORDERED.

Dated: Brooklyn, New York
       October 26, 2012

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge